1  GODFREY J. TENCER, ESQ.
   (SBN # 56162)
2  SARA WILSON (SBN 172888)
   1000 Fourth Street, Suite 875
3  San Rafael, CA 94901
   Telephone:    (415) 459-2000
4  Telecopier:   (415) 459-3668

5  Attorney for Plaintiff

6

7

8              UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              UNLIMITED JURISDICTION

11

12  CICILY BRANCH,                           No.

13        Plaintiff,              COMPLAINT FOR DAMAGES;
                                  DECLARATORY RELIEF;
14  v.                           DISCRIMINATION; HARASSMENT

15  SAN FRANCISCO VETERAN'S
16  ADMINISTRATION MEDICAL,
    CENTER; and DOES 1-10, Inclusive,
17
18        Defendants.
    _____\
19

20

21
22              INTRODUCTION
23
        Plaintiff CICILY BRANCH ("Plaintiff" or "Ms. Branch") by and through her
24
    undersigned counsel, Law Offices of Godfrey J. Tencer, as and for her Complaint in this action
25
    against Defendant San Francisco Veteran's Administration Medical Center ("Defendant" or "the
26
    Hospital"), hereby alleges as follows:
27

28

## NATURE OF THE CLAIMS

1.     This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and retaliation against Plaintiff, including Defendant's unlawful discrimination and retaliation against Plaintiff because of her race/color, national origin and/or disabilities, and because of her repeated complaints about such unlawful discrimination and retaliation, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA"); and the California Fair Employment and Housing Act ("FEHA").

2.     Over the course of Plaintiff's nearly 14-year employment history at the Hospital, Defendant repeatedly subjected Plaintiff to unlawful discrimination and harassment because of her race/color, national origin, age, and disabilities, as well as to unlawful retaliation.  Plaintiff has repeatedly complained about this and other discriminatory and harassing misconduct at the Hospital and in return has been subjected to unlawful retaliation.

3.     Defendant's conduct was knowing, malicious,  willful, and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages, permanent harm to her professional and personal reputation, and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under Title VII, Section 1981, and the ADA.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**PARTIES**

6.      Plaintiff Cicily Branch is a 62 year old woman and an immigrant from Guyana who had knee replacement surgery on both knees.  Both before surgery, when the knees were compromised by injury and after when she was recovering, Ms. Branch had minimally limited mobility.  From in or around 2000 to October 2013, Ms. Branch was an employee at Defendant's Hospital in San Francisco (the "Hospital").  At all relevant times, Ms. Branch met the definition of an "employee" under all applicable statutes.

7.      Defendant is a governmental agency.  At all relevant times, Defendant owned, operated and maintained the Hospital.  At all relevant times, Defendant met the definition of an "employer" under all applicable statutes.

**PROCEDURAL REQUIREMENTS**

8.      Plaintiff has complied with all statutory prerequisites to filing this action.

9.      On or about December 5, 2013, Ms. Branch filed a Complaint (the "EEOC Complaint") with the Equal Employment Opportunity Commission (the "EEOC") charging Defendant with unlawful discriminatory employment practices because of disability, national origin, age, and race/color.

10.      On June 18, 2014, Ms. Branch filed a Complaint (the "DFEH Complaint") with the Department of Fair Employment and Housing (hereinafter "DFEH") charging Defendant with unlawful discriminatory employment practices employment practices because of disability, national origin, age, and race/color discrimination, and retaliation.

11.      On June 18, 2014, the DFEH issued a Notice of Case Closure and Right to Sue authorizing Ms. Branch to pursue her claims of unlawful employment discrimination, harassment, and retaliation.

12.      This action has been filed within one year of Plaintiff's receipt of her right-to-sue letter from the DFEH.

13.      Any and all other prerequisites to the filing of this suit have been met.

/ / /

/ / /

# FACTUAL ALLEGATIONS

## II. Discrimination and Harassment on the Basis of Race/Color, National Origin, and Age

### A. Discrimination, Harassment

14.     Throughout her employment at the Hospital, Ms. Branch has been singled out by other employees and managers at the Hospital - including her direct supervisors - who have subjected her to discrimination and harassment, because she is Black/Caribbean and because she suffers from knee problems that minimally limit mobility.

15.     For example, when Ms. Branch initially applied for a transfer to the VA Hospital in San Francisco (from the VA Hospital in Seattle), she sought a position in the Intensive Care Unit (hereinafter "ICU") or Critical Care Unit (hereinafter "CCU"), for which she had received specialized training and education. The Hospital said there were currently no openings. The nursing supervisor suggested that Ms. Branch take a position in the Transitional Care Unit ("TCU"). The supervisor would alert Ms. Branch when an opening occurred and she could transfer to the ICU or CCU.

16.     Several weeks after her hire, the Hospital hired a new nurse for the ICU. The manager of the ICU was Phillipina and over the next few years, several nurses were hired for the ICU and TCU, all of whom were Caucasian or Phillipina. Ms. Branch was never informed when an opportunity became available.

17.     As another example, Ms. Branch was boarded at the VA Hospital in Dallas, Texas. Ms. Branch requested to be boarded upon her arrival at the VA Hospital in San Francisco. Despite repeated requests by Ms. Branch, the process took more than five years in San Francisco. This failure to act on the part of the Hospital negatively impacted Ms. Branch's career and salary in that she couldn't be promoted, thereby losing salary increases and job opportunities. For Caucasian employees the boarding process happened immediately.

/ / /

/ / /

18.     The Hospital failed to investigate Ms. Branch's complaints and did not attempt to prevent employees from engaging in similar unlawful discriminatory and harassing conduct. Ms. Branch's co-workers have also spread false rumors that she is going to retire because of her age.

III.     **Disability Discrimination, Harassment and Failure to Accommodate**

A. **Failure to Accommodate**

19.     Ms. Branch's direct supervisor, Karen Dunn ("Dunn"), a white female, has also subjected her to unlawful discrimination and harassment. By way of example only, Ms. Branch was injured when she fell at work in 2000. For several years Ms. Branch limped and had limited mobility that made kneeling and squatting difficult. This in no way prevented Ms. Branch from carrying out her duties. As a registered nurse, she had several people including other colleagues and nursing assistants on the floor, whom she could ask to carry out the task that required kneeling or squatting.

20.     Ms. Branch's treating physician recommended knee replacement surgery. The left knee was done first in May 2008. Ms. Branch was off work for several weeks and returned with a restriction of no kneeling and squatting. Ms. Branch continued to work, still using orderlies and other assistants on the floor when she was required to kneel.

21.     On June 18, 2013, Ms. Branch had her second knee replacement surgery. She was off work for several months. The treating physician released Ms. Branch to return to work on October 1, 2013. Ms. Branch provided the doctor's note to Dunn, the nursing supervisor, and asked to be placed on the schedule. Ms. Branch was scheduled to work on October 1, 2013 on the graveyard shift.

22.     At the conclusion of her shift, Ms. Branch was advised that the Hospital would be unable to accommodate her work restrictions. Further she would not be permitted to work her shift until all restrictions had been removed by the treating physician. This information was conveyed despite her successful conclusion of a shift and three years of working with the same restrictions.

23.     Three other employees on the floor were working with light duty in October 2013. The employees who were being accommodated were Caucasian. Ms. Branch's light duty would entail only an occasional assist by an orderly or nursing assistant to do the rare task that requires kneeling.

24.     Also on the last shift she worked, Ms. Branch was approached by a colleague, who remarked that she had heard Ms. Branch was retiring. The Hospital had been talking while Ms. Branch was recovering from surgery, probably noting her age and her surgeries, and time to retire. In fact, Ms. Branch intended to work a full career to ensure a maximum payment of social security and pensions.

25.     The news that she would be unable to work and earn money created a serious anxiety for Ms. Branch. She is the only source of income for her family, which includes several children in college. The Hospital never suggested Ms. Branch could take certain actions that would aid her in finding a different position or appealing the denial of her accommodation. She was told she couldn't work and left to figure out what to do next on her own.

26.     The Hospital did not want Ms. Branch to remain in her position at the Hospital. The Hospital did nothing to assist Ms. Branch in continuing to earn money until she could return to her position. Ms. Branch went to Human Resources (hereinafter "HR") because she was in a panic and would not have any income. Ms. Branch met with Brett Laidler, who told her she was eligible for retirement. Further, Laidler said if Ms. Branch were to retire as of October 1, 2013, she would receive a check on her retirement by November 1, 2013. HR never offered information about filing a complaint, about finding another position in the Hospital, about engaging in the interactive process, or about appealing the denial accommodation.

27.     Defendant has failed to seriously investigate or discipline any employee in connection with these acts of discrimination, harassment and retaliation. Indeed, the Hospital's failure and refusal to respond to the many complaints that Ms. Branch has submitted over the years provides compelling confirmation of the Hospital's indifference to the unlawful conduct of its employees.

28.     By way of example only, in one of her many complaints to the Hospital, Ms. Branch wrote as follows: "I was boarded in Dallas, Texas, as a Nurse 1 Level 3 Step 9. Why do I need to be re-boarded as a new employee in San Francisco? I should be boarded in San Francisco at the same level as I was in Dallas, Texas."

29.     Upon information and belief, the Hospital never investigated Ms. Branch's complaints of discrimination and harassment in connection with her mistreatment.

30.     The Human Resources Director claimed that the Hospital would conduct a thorough investigation and take appropriate action. Nevertheless, the Hospital conducted no investigation whatsoever in the weeks following Ms. Branch's complaint.

31.     The Hospital's failure to investigate and take prompt remedial action in response to these and other complaints by Ms. Branch was in violation of its own written employment policies.

32.     For the 13+ years between the injury and the termination of employment, Ms. Branch experienced decreased mobility. Although she didn't have any formal restrictions on her duties, Ms. Branch was limited in her ability to squat and bend.

33.     After the second knee surgery, Ms. Branch followed her doctor's orders in terms of recovery. She was released to return to work with modified duties on October 1, 2013. Ms. Branch provided the physician's note to the nursing supervisor in charge of scheduling and she was placed on the schedule for October 1, 2013.

34.     After she worked the first shift, Ms. Branch's supervisor claimed she had not seen the doctor's note. The supervisor further claimed that the Hospital was unable to accommodate the modified duties the doctor had set out.

35.     Although the Hospital was fully aware that Ms. Branch's health was attributable to its failure to maintain the property causing her to fall, it insisted that it could not accommodate her.

36.     Despite the notes from Ms. Branch's doctors, the Hospital was unyielding in its refusal to offer her modified duties. The Hospital also failed to propose any alternative accommodation for Ms. Branch's documented medical needs, and would not engage in any sort

1  of dialogue with Ms. Branch regarding possible accommodations that could enable her to
2  continue working despite her medical conditions.

3      37.    Ms. Branch was shocked by the Hospital's callous denial of her medical need for a
4  duties modification.  After 13+ years of excellent service to the Hospital.  Several other
5  employees were being accommodated in October 2013.  Importantly, the modification to her
6  duties was minimal (no bending and squatting) and would arise a few times during a shift.  These
7  could easily be performed by another Hospital employee.  Nevertheless, Ms. Branch felt that she
8  had no choice but to comply with the directive from HR to retire as she would be unable to afford
9  her monthly bills, if she couldn't work.

10     **IV.      Unlawful Retaliation Committed Against Ms. Branch**

11     38.    Ms. Branch worked for three years while her knees were injured and limited her
12  mobility.  However, after she took medical leave to treat her bad knee, the Hospital found an
13  opportunity to push her out.  Ms. Branch is an older worker at age 62 and viewed as a more
14  expensive.

15     39.    Moreover, the Hospital unlawfully retaliated against Ms. Branch for taking
16  medical leave.  By way of example only, Ms. Branch's supervisors refused to put her on the
17  schedule to work, refused to engage in the interactive process, despite its accommodation of
18  other employees on the same unit.

19     40.    Additional acts of discrimination and harassment were committed against Ms.
20  Branch as part of the Hospital's campaign of unlawful retaliation.

21                              **FIRST CAUSE OF ACTION**

22             **(Discrimination and Harassment in Violation of Section 1981)**

23     41.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1
24  through 40, inclusive, as if fully set forth herein.

25     42.    Defendant has discriminated against Plaintiff on the basis of her race/color
26  (Black) in violation of Section 1981 by denying her the same terms and conditions of
27  employment available to employees who are not Black, including but not limited to, subjecting

28