1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    CICILY BRANCH,                              Case No.  14-cv-03846-DMR
              Plaintiff,
8
         v.                                      **ORDER ON DEFENDANT'S MOTION
9                                                FOR SUMMARY JUDGMENT**
     ROBERT A. MCDONALD,                         Re: Dkt. No. 22
10            Defendant.

11

12          Plaintiff Cicily Branch brings this employment action.  Defendant Robert A. McDonald,

13   Secretary of Veterans Affairs, moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and

14   12(b)(6) to dismiss Plaintiff's amended complaint, or in the alternative, for summary judgment.

15   [Docket No. 22.]  After a hearing, the court issued an order granting Defendant's motion in part

16   and ordering further evidentiary submissions in support of Plaintiff's remaining claims.  [Docket

17   No. 30 (Order on Def.'s Mot. to Dismiss).]  The parties timely filed the submissions.  [Docket

18   Nos. 34 (Branch Decl., May 19, 2015), 35 (Def.'s Objections).]  The court also ordered the parties

19   to provide supplemental briefing, which the parties timely filed.  [Docket Nos. 38, 45-47.]

20          The court finds this matter is appropriate for resolution without a hearing.  *See* N.D. Cal.

21   Civ. Local Rules 7-1(b).  For the following reasons, the court grants the motion.

22                                      **I. Background**

23          Plaintiff makes the following allegations in her complaint.  Plaintiff, who is from Guyana,

24   is 62 years old.  She worked as a Registered Nurse at the San Francisco VA Medical Center

25   (SFVAMC or "hospital") from 2000 until her retirement in October 2013.  (Am. Compl. ¶ 6.)

26          Plaintiff alleges that throughout her employment, SFVAMC subjected her to a pattern and

27   practice of discrimination and harassment because she is "Black/Caribbean" and because she

28   suffers from knee problems that limit her mobility.  (Am. Compl. ¶ 11.)  For example, when

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff initially applied for a transfer to SFVAMC from a VA hospital in Seattle, she sought a

2    position in either the Intensive Care Unit (ICU) or Critical Care Unit (CCU) for which she had

3    received specialized training.  However, she was told there were no positions in those units and

4    was instead placed in the Transitional Care Unit (TCU).  Over the next few years, SFVAMC hired

5    several new nurses for the ICU and TCU, all of whom were either Caucasian or Filipina.  Plaintiff

6    never received notice that such positions were available, ostensibly preventing her from applying

7    to transfer to those units.  (Am Compl. ¶¶ 12, 13.)  In addition, SFVAMC delayed a process called

8    "boarding" (which Plaintiff does not explain) for five years after Plaintiff arrived in San Francisco,

9    which allegedly negatively impacted Plaintiff's salary and promotion opportunities.  (Am. Compl.

10   ¶ 14.)

11         Plaintiff fell at work in 2000 and the resulting injury left her with limited mobility that

12   made kneeling and squatting difficult.  However, Plaintiff was able to complete her job duties by

13   asking colleagues and nursing assistants to assist her by carrying out tasks that required kneeling

14   or squatting.  (Am. Compl. ¶ 16.)  In 2008, Plaintiff had knee replacement surgery on her left

15   knee.  After surgery, she returned to work with the restriction of no kneeling and squatting.

16   Plaintiff continued to seek assistance from others when she was required to kneel.  (Am. Compl. ¶

17   17.)

18         In June 2013, Plaintiff had knee replacement surgery on her right knee and was off work

19   for several months.  On October 1, 2013, her doctor released her to work with modified duties, and

20   Plaintiff provided her doctor's note to her supervisor.  (Am. Compl. ¶¶ 18, 30.)  After completing

21   her first shift back at work on October 1, 2013, Plaintiff was advised that SFVAMC would be

22   unable to accommodate her work restrictions and that it would not permit her to work until her

23   doctor had removed all restrictions.  (Am. Compl. ¶¶ 19, 31.)  According to Plaintiff, SFVAMC

24   accommodated Caucasian employees with light duty work but refused to accommodate her by

25   allowing her to receive assistance from orderlies or nursing assistants to perform tasks requiring

26   kneeling.  (Am. Compl. ¶ 20.)

27         Plaintiff went to Human Resources for assistance, and was told that she was eligible for

28   retirement.  (Am. Compl. ¶ 23.)  According to Plaintiff, HR "never offered information about

2

1    filing a complaint, about finding another position in the Hospital, about engaging in the interactive

2    process, or about appealing the denial [of] accommodation." (Am. Compl. ¶ 23.)  Plaintiff alleges

3    that the modification she sought—assistance from other employees with duties involving bending

4    or squatting—was "minimal," but that SFVAMC was "unyielding in its refusal to offer her

5    modified duties."  Plaintiff also alleges that SFVAMC failed to propose any alternative

6    accommodations for Plaintiff, nor did it engage in any dialogue with Plaintiff regarding possible

7    accommodations that would allow her to continue working despite her limitations.  (Am. Compl.

8    ¶¶ 33, 34.)  Plaintiff asserts that she felt that she had no choice but "to comply with the directive

9    from HR to retire." (Am. Comp. ¶ 34.)  Plaintiff alleges that on December 5, 2013, she filed a

10   complaint with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful

11   employment practices based on disability, national origin, age, and race/color.  (Am. Compl. ¶ 9.)

## II. Procedural History

13       In her original complaint, Plaintiff asserted nine claims against SFVAMC.  [Docket No. 1.]

14   Plaintiff filed an amended complaint on January 23, 2015, asserting four claims against

15   Defendant: 1) discrimination and harassment on the basis of her race/color (Black) under 42

16   U.S.C. § 1981; 2) retaliation for opposing and/or complaining of Defendant's discriminatory

17   practices against herself and other employees in violation of 42 U.S.C. § 1981; 3) discrimination

18   and harassment on the basis of her race/color (Black) and/or national origin (Guyanese) in

19   violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; and 4) failure to

20   reasonably accommodate Plaintiff's disability in violation of Section 501 of the Rehabilitation Act

21   of 1973, 29 U.S.C. §§ 701 *et seq.*[1]  [Docket No. 18.]

22       Defendant moved to dismiss Plaintiff's amended complaint pursuant to Federal Rules of

23   Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment pursuant to

24   Rule 56.  Plaintiff conceded her section 1981 claims as well as her claims based on pre-2013

25   incidents; the court dismissed those claims with prejudice.  (Order on Def.'s Mot. to Dismiss 5.)

26

27   ─────────────────────

[1] Plaintiff's amended complaint contains causes of action numbered 1-3 and 5; it does not include

28   a fourth cause of action.  The court will refer to the "fifth" cause of action, violation of the
Rehabilitation Act, as the fourth.

United States District Court
Northern District of California

United States District Court
Northern District of California

1       As to the remaining Title VII and Rehabilitation Act claims, Defendant moved to dismiss

2   them on the grounds that they are barred by Plaintiff's failure to timely exhaust her administrative

3   remedies.  "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional

4   prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to

5   waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393

6   (1982); *see also Vinieratos*, 939 F.2d at 768 n.5 ("[w]e do not recognize administrative exhaustion

7   under Title VII as a jurisdictional requirement per se . . . the issue is whether the plaintiff has

8   satisfied a statutory precondition to suit." (emphasis removed)).  Therefore, the court concluded

9   that Defendant's motion should be treated as a Rule 12(b)(6) motion to dismiss for failure to state

10  a claim, rather than a motion challenging subject matter jurisdiction pursuant to Rule 12(b)(1).

11  *See, e.g., Shepard v. Winter*, No. 06-5463 RBL, 2007 WL 3070495, at *4 (W.D. Wash. Oct. 19,

12  2007), *aff'd*, 327 F. Appx. 691 (9th Cir. 2009) (holding motion to dismiss for failure to exhaust

13  administrative remedies must be evaluated as Rule 12(b)(6) motion); *De Los Reyes v. Ruchman &*

14  *Assocs., Inc.*, No. 14-cv-00534-WHO, 2014 WL 4354238, at *5 (N.D. Cal. Sept. 2, 2014)

15  ("Because the court's jurisdiction is not in question, the issue [of exhaustion] cannot be resolved

16  on a 12(b)(1) motion.").

17      In support of his motion, Defendant submitted two declarations containing evidence

18  regarding Plaintiff's decision to retire, the effective date of her retirement, and the date she

19  initiated EEO counseling.  When a court considers matters outside the pleadings on a motion

20  under Rule 12(b)(6), it must convert the motion into a Rule 56 motion for summary judgment, and

21  in so doing, the court must give "[a]ll parties . . . a reasonable opportunity to present all the

22  material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see also San Pedro Hotel Co., Inc.*

23  *v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998) ("In providing notice to the parties, 'a

24  district court need only apprise the parties that it will look beyond the pleadings to extrinsic

25  evidence and give them an opportunity to supplement the record.'" (citation omitted)).  The court

26  granted Plaintiff leave to file supplemental evidence on the issue of administrative exhaustion, and

27

28

4

1   permitted Defendant to file objections to Plaintiff's evidence.[2]  The parties timely filed the

2   requested submissions.  Having provided the parties the opportunity to supplement the factual

3   record, the court will evaluate Defendant's motion under Rule 56.

### III. Legal Standard

5   A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

6   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden

7   of establishing the absence of a genuine issue of material fact lies with the moving party, *see*

8   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the

9   light most favorable to the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation

10  omitted).  A genuine factual issue exists if, taking into account the burdens of production and

11  proof that would be required at trial, sufficient evidence favors the non-movant such that a

12  reasonable jury could return a verdict in that party's favor.  *Anderson v. Libby Lobby, Inc.*, 477

13  U.S. 242, 248.  The court may not weigh the evidence, assess the credibility of witnesses, or

14  resolve issues of fact.  *See id.* at 249.

15  To defeat summary judgment once the moving party has met its burden, the nonmoving

16  party may not simply rely on the pleadings, but must produce significant probative evidence, by

17  affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that

18  a genuine issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

19  F.2d 626, 630 (9th Cir. 1987) (citations omitted).  In other words, there must exist more than "a

20  scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252;

21  conclusory assertions will not suffice.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738

22  (9th Cir. 1979).  Similarly, "[w]hen opposing parties tell two different stories, one of which is

23  blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

24  adopt that version of the facts" when ruling on the motion.  *Scott*, 550 U.S. at 380.

25

26  ---

[2]  Plaintiff's counsel represented that the question of whether Plaintiff timely exhausted her
27  administrative remedies turns on Plaintiff's actions between the date of her last shift on October 1, 2013 and the effective date of her retirement, which was October 31, 2013.  Based on this
28  representation, the court concluded that the information necessary for full consideration of the motion for summary judgment was within Plaintiff's control, and did not require discovery.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

**IV. Discussion**

Defendant argues that he is entitled to summary judgment on Plaintiff's Rehabilitation Act and Title VII claims because Plaintiff did not initiate the required EEO process within the statutory timeframe with respect to the events leading up to her October 2013 retirement. Plaintiff counters that she initiated the EEO process in a timely fashion. In the alternative, Plaintiff argues that any untimeliness is excused by waiver or equitable tolling.

Both the Rehabilitation Act and Title VII require a federal employee to exhaust her administrative remedies before pursuing a claim in district court. *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997); *Vinieratos v. U.S. Dep't of the Air Force*, 939 F.2d 762, 767-68 (9th Cir. 1991). Federal regulations provide that employees "who believe they have been discriminated against . . . must consult [an EEO counselor] prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with [an EEO counselor] within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action," such contact must occur "within 45 days of the *effective date of the action.*" 29 C.F.R. § 1614.105(a)(1) (emphasis added). "Failure to comply with this regulation is fatal to a federal employee's discrimination claim." *Cherosky v. Henderson*, 330 F.3d 1243, 1245 (9th Cir. 2003) (quotation marks and citation omitted).

Plaintiff's final scheduled shift was a night shift that began on October 1, 2013 and ended on October 2, 2013. (Branch Decl. ¶¶ 10, 11.) At the conclusion of her shift on October 2, 2013, Nurse Manager Karen Dunn told her that SFVAMC would be unable to accommodate her work restrictions and recommended that she look for another position. (Branch Decl. ¶¶ 12, 14.) On October 2, 2013, Plaintiff applied for and was granted leave without pay from October 2, 2013 through October 31, 2013. (Lichtenberger Decl., Feb. 23, 2015, Ex. E.) On October 3, 2013, at Dunn's suggestion, Plaintiff consulted with the Human Resources department and learned she was eligible for retirement. (Branch Decl. ¶¶ 15, 17.) Human Resources Specialist Brett Laidler told Plaintiff that if she submitted her "retirement paperwork immediately, [she] would have several weeks before the retirement was effective," during which Plaintiff could search for another position at SFVAMC. (Branch Decl. ¶ 17.) The same day, October 3, 2013, Plaintiff wrote to

6

United States District Court
Northern District of California

1  Nurse Manager Karen Dunn, noting that

2
3      [s]ubsequent to our meeting 10/3/13 about restrictions on my return
       to work certificate and my report and documentation of progressive
       vision impairment it was agreed that Patient care and patient safety
4      would be compromised and I could no longer work on the unit.

5  (Lichtenberger Decl. Ex. D.)  Plaintiff notified Dunn that she would be taking leave until October

6  31, 2013 and that "at this time I decided to apply for immediate retirement."  (Lichtenberger Decl.

7  Ex. D.)  Plaintiff's retirement from SFVAMC was effective on October 31, 2013.  (Lichtenberger

   Decl. ¶ 3.)

8        Plaintiff states that in mid- November 2013, she was referred to Lynn Hart, SFVAMC's

9  Equal Employment Opportunity Program Manager, and that Plaintiff contacted Hart by telephone.

10  (Branch Decl. ¶ 21.)  Plaintiff does not identify the date or dates on which she called or spoke with

11  Hart, nor does she describe the substance of any conversations with Hart.  According to Hart,

12  Plaintiff called her office during the week of November 25, 2013, but she does not recall speaking

13  with Plaintiff until on or about December 2, 2013.  (Hart Decl., March 16, 2015, ¶¶ 9, 10.)  Hart

14  states that she discussed the requirements for filing an EEO claim with Plaintiff on that day.  (Hart

15  Decl. ¶ 10.)  On December 5, 2013, Plaintiff sent a fax to Hart in which she wrote, "I hereby file

16  an EEOC complaint related to the attached incidents that ended in immediate retirement as at [sic]

17  10/30/13."  (Branch Decl. ¶ 21 Ex. B.)  A handwritten note on the fax states that Plaintiff's

18  complaint was for failure to accommodate; constructive termination; and "discrimination ended

19  10/30/13."[3]

20

21  [3] There appears to be no dispute that Plaintiff notified Hart of her intention to file an EEO
    complaint on December 5, 2013.  (*See* Hart Decl. ¶ 10 ("On or about December 5, 2013, Ms.
22  Branch notified me that she intended to file an EEO complaint."); Branch Decl. ¶ 21 (attaching
    fax to Hart dated December 5, 2013).)  The court notes, however, that the evidence of Plaintiff's
23  December 5, 2013 fax submitted by both parties is inconsistent and confusing.  Plaintiff's copy is
    only one page, and contains a handwritten date, "12/5/13."  (Branch Decl. Ex. B.)  But the
24  document is date-stamped April 6, 2012, well before Plaintiff's retirement.  Defendant submitted a
    similar document that consists of a handwritten fax cover page that is nearly identical to Plaintiff's
25  copy, but it is not the same document and contains no handwritten date.  Although Defendant
    asserts the document is from January 29, 2014, the document is date-stamped January 29, 2012.
26  (Lichtenberger Decl. ¶ 12 Ex. D.)  Further, Defendant's copy of Plaintiff's fax contains three
    attachments: 1) a statement regarding Plaintiff's return to work and "events which led to a
27  decision for immediate retirement"; 2) a November 7, 2013 letter from Human Resources
    Specialist Laidler confirming that Plaintiff's last date of work was October 1, 2013 and that she
28  had "elected to retire voluntarily effective October 31, 2013"; and 3) Plaintiff's October 3, 2013
    letter to Dunn.  (Lichtenberger Decl. Ex. D.)

<div style="text-align: left; writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

1    On February 3, 2014, Plaintiff filed a Complaint of Employment Discrimination with the

2    Department of Veterans Affairs, complaining of a denial of reasonable accommodation resulting

3    in forced retirement and race and age discrimination, noting that "other nurses working on unit

4    10/1-10/2 were granted accommodation."[4]  (Lichtenberger Decl. Ex. B.[5])  The VA's Office of

5    Resolution Management sent a notice of acceptance of the EEO complaint to Plaintiff's counsel on

6    February 14, 2014, identifying two claims:

7          A. Whether complainant was discriminated against based on race,
           age and disability, when on October 2 and 3, 2012,[6] she was denied
8          a reasonable accommodation [and]

9          B. Whether complainant was discriminated against based on race,
           age and disability, when she retired from her Title 38 Registered
10         Nurse position effective November 1, 2013, due to a constructive
           discharge resulting from the agency failure to accommodate her
11         restrictions.

12   (Lichtenberger Decl. Ex. C.)  Plaintiff filed suit in this court on August 25, 2014, before the VA

13   issued a final determination on Plaintiff's administrative claim.

14   **A.    Rehabilitation Act Claim**

15         Defendant argues that Plaintiff is barred from bringing her Rehabilitation Act claim

16   because she failed to initiate EEO counseling within the requisite 45-day time period.  Defendant

17   asserts that the statutory clock started running on her failure to accommodate claim no later than

18   October 3, 2013, which was the day after she learned SFVAMC could not accommodate her

19   restrictions, as well as the date she decided to retire.  (*See* Branch Decl. ¶¶ 11, 12.)  In response,

20

21   _____

22         Additionally, Plaintiff is inconsistent about the date the alleged discrimination ended.  In
     her opposition to Defendant's motion she identifies October 31, 2013 as the applicable date, but in
23   her declaration she identifies October 30, 2013.  (*See* Pl.'s Opp'n 10; Branch Decl. ¶ 21 ("I
     identified the date the discrimination ended as October 30, 2013").)  Viewing the evidence in the
24   light most favorable to Plaintiff, the court will use the later date for purposes of deciding this
     motion.

25   [4] Plaintiff has not brought a claim for age discrimination.

26   [5] Plaintiff's signature on her complaint is dated January 31, 2014, but it appears Plaintiff did not
27   transmit the complaint until February 3, 2014.  (*See* Lichtenberger Decl. Ex. B at ECF p. 30.)

28   [6] The notice's reference to the year 2012 appears to be a typo.

1    Plaintiff argues that she "last suffered an adverse employment action as an employee of

2    [SFVAMC] on October 31, 2013," which was her last date of employment before her retirement.

3    (Pl.'s Opp'n 10; *see also* Branch Decl. ¶ 21.)

4         The date that the statutory clock began to run is central to whether Plaintiff initiated the

5    EEO counseling process in a timely manner.  In order to determine whether Plaintiff timely

6    exhausted her administrative remedies, the court must "identify precisely the 'unlawful

7    employment practice' of which [she] complains." *Del. State Coll. v. Ricks*, 449 U.S. 250, 257

8    (1980).  The Supreme Court's decision in *Ricks* is instructive.  In *Ricks*, after denying plaintiff

9    tenure, defendant offered (and plaintiff accepted) a "terminal" contract allowing him to teach one

10   additional year before being officially terminated.  *Id*. at 252-54.  Plaintiff challenged the denial of

11   tenure as discriminatory, and claimed that the limitations period should run from the date of the

12   expiration of his terminal contract, and not from the date his tenure was denied.  *Id*. at 257.  In

13   examining whether plaintiff's EEOC complaint was timely, the Court stated that "[t]he proper

14   focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of

15   the acts became most painful."  *Id*. at 258 (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209

16   (9th Cir. 1979)) (emphasis in *Ricks*).  The Court held that "the only alleged discrimination

17   occurred—and the filing limitations periods therefore commenced—at the time the tenure decision

18   was made and communicated to [the plaintiff] . . . even though one of the *effects* of the denial of

19   tenure—the eventual loss of a teaching position—did not occur until later."  *Id*. (noting "[t]he

20   emphasis is not upon the effects of earlier employment decisions; rather, it is [upon] whether any

21   present *violation* exists." (quotation marks and citation omitted)).  Therefore, the Court concluded

22   that the limitations period commenced to run as of the date the defendant "had established its

23   official position" denying the plaintiff tenure.  *Id*. at 262.

24        Here, Plaintiff complains that SFVAMC failed to accommodate her medical restrictions,

25   which forced her to retire.  That alleged discrimination took place on October 3, 2013, when

26   Plaintiff was informed by her supervisor that the hospital was unable to accommodate her.

27   (Lichtenberger Decl. Ex. D.)  Plaintiff submits evidence about her efforts to resolve the situation

28   prior to October 31, 2013, the effective date of her retirement, as well as her belief that she could

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    return to work before that date.  For example, she states that she was aware that one or two of her

2    colleagues were being accommodated with light duty in October 2013, and asserts that it was

3    likely that one of them "would return to regular duty in the near future, opening up an opportunity

4    for [her] to have a light duty position."  (Branch Decl. ¶ 16.)  Plaintiff also contends that there was

5    a chance that her "healing would be very quick" and that her doctor would lift her work

6    restrictions.  (Branch Decl. ¶ 16.)  Plaintiff describes her efforts to pursue alternative options for

7    light duty positions, including applying for a Tele-Care Advice Nurse position in mid-October

8    2013.  (Branch Decl. ¶¶ 18-20.)  However, she never heard back about her application for this

9    position, and by the end of October, she had had no success locating a different position.[7]  (Branch

10   Decl. ¶¶ 19, 20.)  Therefore, she states she was "forced into retirement" effective October 31,

11   2013.  (Branch Decl. ¶ 20.)

12        Essentially, Plaintiff asserts that her October 3, 2013 decision to retire was provisional,

13   because she could have changed her retirement election up until October 31, 2013, and much

14   could have happened during those intervening weeks.  This improperly focuses the inquiry on

15   Plaintiff's belief as to when the alleged discrimination concluded.  In order to assess the timeliness

16   of the administrative exhaustion requirement, the law requires the factfinder to determine the date

17   of Defendant's discriminatory act—in this case, the October 3, 2013 failure to provide reasonable

18   accommodation.  There is no record evidence that this decision was anything but final on October

19   3, 2013, and Plaintiff presents no evidence that anyone at SFVAMC suggested that the denial of

20   accommodation was merely provisional.  *See Ricks*, 449 U.S. at 262 (limitations period started

21   running as of date that employer "had established its official position—and made that position

22   apparent to [plaintiff]").  In fact, the evidence shows the opposite—that on October 3, 2013, Dunn

23   "recommended [Plaintiff] pursue nursing opportunities outside the VA organization and

24   encouraged [Plaintiff] to research other jobs."[8]  (Branch Decl. ¶ 14.)

25

26   [7] Plaintiff has not asserted a hiring claim and never pleaded a failure to hire in her administrative
     complaint.  (Lichtenberger Decl. Exs. A, B.)  Therefore, any claim based upon this alleged failure
27   to hire is barred for failure to exhaust administrative remedies.  *See Ong v. Cleland*, 642 F.2d 316,
     318 (9th Cir. 1981).

28   [8] In supplemental briefing, Plaintiff argues that SFVAMC failed to engage in good faith in the

10

United States District Court
Northern District of California

1    The Ninth Circuit has held that the rejection of a proposed accommodation for a disability

2    constitutes a "discrete act" that accrues when the employer denies an individual employee's

3    request. *See Cherosky*, 330 F.3d at 1247-48 (concluding that the rejection of a proposed

4    accommodation does not give rise to a continuing violation).  This is not a case involving a

5    continuing pattern of wrongdoing, or repeated acts that each constitute an illegal act.  Here,

6    Defendant's alleged decision to deny her an accommodation is the sole discriminatory act.  Dates

7    relating to the consequences of that act, such as Plaintiff's October 31, 2013 retirement, are not

8    determinative. *See Ricks*, 449 U.S. at 258 (proper focus is on the time the discriminatory acts

9    occurred, not on the time the effects are felt); *see also Lukovsky v. City & Cty. of San Francisco*,

10   535 F.3d 1044, 1048 (9th Cir. 2008) (generally, statute of limitations on cause of action begins to

11   run "when the plaintiff knows or has reason to know of the injury which is the basis of the

12   action").  Defendant's failure to take action after October 3, 2013 does not transform his alleged

13   failure to accommodate into an ongoing violation. *See Ricks*, 449 U.S. at 257 ("[m]ere continuity

14   of employment, without more, is insufficient to prolong the life of a cause of action for

15   employment discrimination."); *McCoy v. San Francisco*, 14 F.3d 28, 30 (9th Cir. 1994) (citing

16   *Ricks*).

17       In sum, the fact that Plaintiff's employment did not formally end until October 31, 2013

18   does not change the date of the alleged misconduct.  Accordingly, the court finds that the

19   undisputed facts demonstrate that Plaintiff's claim for a failure to accommodate accrued on

20   October 3, 2013.  Plaintiff was therefore required to initiate EEO counseling within the requisite

21

22   interactive process to identify a reasonable accommodation, asserting that it "never explored any
23   options other than unpaid leave.  According to Plaintiff, the entire 'interactive process' lasted 24
     hours." [Docket No. 45 (Pl.'s Suppl. Brief) at 9.]  However, she concedes that her assertion that
24   SFVAMC failed to engage in the interactive process is not a separate, stand-alone claim, but is
     instead "an integral part of the request for a reasonable accommodation." (Pl.'s Suppl. Brief at 5,
25   6.)  Any failure to engage in the interactive process took place on October 3, 2013, the date
     Plaintiff learned that her request for an accommodation had been denied. *See Long v. Howard*
26   *Univ.*, 512 F. Supp. 2d 1, 15 (D.D.C. 2007) ("[t]he availability of an interactive process . . . does
     not alter the applicability of the discovery rule . . . [c]laims of discrimination accrue when the
27   plaintiff is informed of the discriminatory act, regardless of the possibility of discussions or other
     process thereafter." (citations and quotation marks omitted)).

28

1    45-day time period, which ended on November 17, 2013.

2         The parties do not agree on the date on which Plaintiff initiated EEO counseling.

3    According to Defendant, Plaintiff initiated EEO counseling on December 10, 2013.  He submits a

4    December 13, 2013 letter from EEO Specialist David Keller in which Keller writes that he will

5    serve as the EEO counsel "in the matter you reported to the Office of Resolution Management

6    (ORM) on December 10, 2013," and briefly describes Dunn's alleged denial of reasonable

7    accommodation "resulting in the aggrieved being forced to retire."  (Lichtenberger Decl. Ex. A.)

8         Plaintiff offers several possibilities for the date she initiated EEO counseling: "mid-

9    November 2013," December 5, 2013, and December 10, 2013.  The court analyzes the evidence

10   supporting the "mid-November 2013" EEO counseling initiation date, since that is the only date

11   which could result in a finding of timely administrative exhaustion.  Plaintiff's sole statement in

12   support of a November 2013 initiation date is as follows: "[i]n mid-November 2013, I was

13   referred to Lyn Hart ('Hart'), who I contacted by telephone."  (Branch Decl. ¶ 21.)  Such contact

14   could satisfy the EEO counselor contact requirement if Plaintiff "exhibited [her] intent" to begin

15   the EEO process when she spoke with Hart.  *See Kraus v. Presidio Trust Facilities*

16   *Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1044 (9th Cir. 2009) ("complainant may satisfy

17   the criterion of EEO Counsel contact by initiating contact with any agency official logically

18   connected with the EEO process . . . and by exhibiting an intent to begin the EEO process"

19   (citation omitted, emphasis removed)).  However, Plaintiff's single statement does not provide

20   sufficient detail about what actually occurred in mid-November 2013.  Plaintiff does not explain

21   whether she was merely referred to Hart in mid-November, or whether Plaintiff actually made

22   contact with her at that time.  Plaintiff does not identify the date on which she spoke with Hart

23   with any specificity beyond "mid-November."   Most importantly, Plaintiff does not provide

24   details about any conversation with Hart from which a juror could reasonably conclude that

25   Plaintiff expressed her intent to begin the EEO process by no later than November 17, 2013.

26   Plaintiff's vague reference to a "mid-November 2013" initiation date is therefore insufficient to

27   rebut Defendant's specific evidence that Plaintiff did not actually speak with Hart until December

28   2, 2013.  (Hart Decl. ¶ 10.)  *See Anderson*, 477 U.S. at 252 ("[t]he mere existence of a scintilla of

United States District Court
Northern District of California

12

1    evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

2    the jury could reasonably find for the plaintiff.").

3          Viewing the evidence in the light most favorable to Plaintiff, the court finds that the

4    earliest date on which Plaintiff could have satisfied the EEO counseling requirement was

5    December 2, 2013, which is beyond the November 17, 2013 deadline for timely initiation of the

6    EEO counseling process.[9]

7    **B.      Title VII Claims**

8          Plaintiff's remaining claims are for discrimination and harassment on the basis of her

9    race/color, black, and/or her national origin, Guyanese.

10         **1.      Discrimination**

11         Defendant argues that Plaintiff's Title VII discrimination claims are also time-barred

12   because she failed to initiate EEO counseling within 45 days of October 3, 2013, the date she

13   decided to retire.

14         As noted, the court must "identify precisely the 'unlawful employment practice' of which

15   [she] complains" in order to determine whether Plaintiff timely exhausted her administrative

16   remedies. *Ricks*, 449 U.S. at 257.  Plaintiff's administrative charge included the following claims:

17

18         A. Whether complainant was discriminated against based on race,
           age and disability, when on October 2 and 3, 2012, *she was denied a*
19         *reasonable accommodation* [and]

20         B. Whether complainant was discriminated against based on race,
           age and disability, when she retired from her Title 38 Registered
21         Nurse position effective November 1, 2013, due to a constructive
           discharge *resulting from the agency failure to accommodate her*
22         *restrictions*.

23   (Lichtenberger Decl. Ex. C (emphasis added).)  A plain reading of the administrative charge

24   demonstrates that Plaintiff's discrimination claims are expressly tied to Defendant's alleged failure

25   ───────────────

26   [9] Plaintiff also argues that she initiated the required counseling on December 5, 2013, the date of
     her fax to Hart in which she complained of discrimination, (*see* Branch Decl. ¶ 21; Am. Compl. ¶
     9).  However, in her opposition to Defendant's motion, she states she "filed the initial claim with
27   the EEO on December 10, 2013." (Pl.'s Opp'n 10.)  This inconsistency is irrelevant, given that
     both dates fall after the November 17, 2013 deadline for timely initiation of the EEO counseling
28   process.

United States District Court
Northern District of California

1    to provide a reasonable accommodation.  In other words, Plaintiff alleges that Defendant denied

2    her a reasonable accommodation in part because of her race.

3            As with her Rehabilitation Act claim, Plaintiff offers no facts demonstrating that the

4    decision to deny her an accommodation was not final on October 3, 2013, nor does she submit

5    evidence that Defendant took adverse action with respect to her employment after that date.  As to

6    evidence of discrimination, Plaintiff states that she was aware of three other nurses on her unit

7    who were being accommodated with light duty schedules in October 2013, but she does not

8    provide their race or national origin.  (*See* Plaintiff Decl. ¶ 16.)  "Mere continuity of employment,

9    without more, is insufficient to prolong the life of a cause of action for employment

10   discrimination," *Ricks*, 449 U.S. at 257, and Plaintiff has identified no "alleged discriminatory acts

11   that continued until, or occurred at the time of, the actual termination" of her employment.  *See id*.

12   Accordingly, Plaintiff has failed to create a triable dispute of fact as to whether her Title VII race

13   and national origin discrimination claims accrued on a date later than October 3, 2013.  Therefore,

14   Plaintiff's initiation of EEO counseling on December 2, 2013 was untimely.

15           **2.      Harassment**

16           Plaintiff's Title VII cause of action is also based upon her claim that she was subject to

17   "severe and pervasive harassment" due to her race/color and/or national origin."  (Am. Compl. ¶

18   46.)

19           Defendant argues that it is entitled to summary judgment on Plaintiff's harassment claim

20   because she never exhausted administrative remedies as to this theory of liability.  In her February

21   3, 2014 Complaint of Employment Discrimination, Plaintiff detailed only the October 3, 2013

22   failure to accommodate and the resulting "forced" retirement.  (Lichtenberger Decl. Ex. B.)  It

23   does not mention harassment based on race/color, national origin, or any other characteristic.

24           Plaintiff did not address this argument, and provides no facts sufficient to create a dispute

25   of fact as to her exhaustion of this claim.  Moreover, it appears that Plaintiff's harassment claim is

26   based on pre-2013 incidents, which Plaintiff conceded could not form the basis for any claims

27   because they are time-barred.  (*See* Am. Compl. ¶¶ 12-14.)  Therefore, the court grants summary

28   judgment on Plaintiff's Title VII harassment claim.  *See Lelaind v. City & Cty. of San Francisco*,

United States District Court
Northern District of California

1    576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008) ("[t]he scope of the administrative charge defines

2    the scope of the subsequent civil action, and unlawful conduct not included in an administrative

3    complaint is not considered by a court unless the conduct is like or reasonably related to the

4    allegations in the administrative complaint, or can reasonably be expected to grow out of an

5    administrative investigation.").

6    **C.    Waiver and Equitable Tolling**

7         The court has ruled that Plaintiff did not exhaust her administrative remedies in a timely

8    manner.  Plaintiff is therefore precluded from pursuing her discrimination claims in court, unless

9    she can prove waiver, estoppel, or equitable tolling.  *Girard v. Rubin*, 62 F.3d 1244, 1246 (9th Cir.

10   1995); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414-15 (9th Cir. 1985).  Here, Plaintiff appears to

11   argue that the doctrines of waiver and equitable tolling excuse her delayed administrative filing.

12        With respect to waiver, Plaintiff suggests that Defendant waived its timeliness objection

13   because the VA accepted her EEO complaint.  (*See* Pl.'s Opp'n 11.)  According to Hart, during the

14   December 2, 2013 conversation with Plaintiff about the requirements for filing an EEO claim, they

15   discussed the 45-day EEO counseling deadline, and Hart "indicated to Ms. Branch that [Hart] did

16   not know if her complaint would be timely."  (Hart Decl. ¶¶ 9, 10.)  Plaintiff did not submit

17   evidence to the contrary.  In the Ninth Circuit, acceptance of an untimely complaint for

18   administrative investigation does not waive an agency's right to later object to the timeliness of

19   the complaint.  *Boyd*, 752 F.2d at 414 ("[t]he mere receipt and investigation of a complaint does

20   not waive objection to a complainant's failure to comply with the original filing time limit" in the

21   absence of an administrative finding of discrimination).  Therefore, Plaintiff has failed to establish

22   a dispute of fact regarding waiver.

23        Equitable tolling is generally applied "to excuse a claimant's failure to comply with the

24   time limitations where she had neither actual nor constructive notice of the filing period."

25   *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (citation omitted).  Here, Defendant

26   submits evidence that Plaintiff participated in a new employee orientation in San Francisco in

27   September 2000, at which SFVAMC would have provided her with training materials on EEO

28   complaint procedures and the 45-day timeframe.  (Hart Decl. ¶¶ 4, 5, Ex. A.)  Defendant also

United States District Court
Northern District of California

15

1    provides evidence that Plaintiff participated in online EEO training in 2008 and 2010, and that the

2    training included information regarding how to file an EEO claim and deadlines for that process.

3    (Hart Decl. ¶ 6.)  Additionally, as noted above, Plaintiff does not dispute that Hart told her about

4    the 45-day EEO counseling deadline during their December 2, 2013 conversation.  (Hart Decl. ¶

5    10.)  Plaintiff offers no evidence to counter these facts.  Accordingly, she has failed to show that a

6    dispute of fact exists as to whether equitable tolling applies.

### IV. Conclusion

8           Plaintiff did not initiate EEO counseling within 45 days of the accrual of her claims for

9    discrimination and the failure to accommodate her disability.  Plaintiff cannot establish that waiver

10   or equitable tolling excuses her failure to comply with the deadline.  Therefore, her remaining

11   causes of action for violation of the Rehabilitation Act and Title VII are untimely.  The court

12   grants summary judgment as to those remaining claims.

14           **IT IS SO ORDERED.**

15   Dated: December 4, 2015



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

16